THE ERIE COUNTY UNITED BANK, APPELLANT, *v.* FOWL
ET AL.; APPELLEES.

THE ERIE COUNTY UNITED BANK, APPELLEE, *v.* FOWL,
APPELLEE; THE MORRIS PLAN BANK OF CLEVELAND,
APPELLANT.

(Nos. 1025 and 1026—Decided June 15, 1942.)

*Messrs. Young & Young,* for The Erie County United Bank.

*Mr. D. B. Symons* and *Mr. Fred Snoble,* for Ralph Fowl.

*Messrs. O'Toole & Pincura,* for The Morris Plan Bank of Cleveland.

DOYLE, P. J. Case No. 1025 is presented as an appeal on questions of law, from a judgment rendered by the Court of Common Pleas of Lorain county, in an action in replevin, in which The Erie County United Bank sought to obtain possession of an automobile from one Ralph Fowl, who had possession as the purchaser thereof from a dishonest retail dealer.

Evidence sufficiently comprehensive for this opinion is hereinafter set forth:

The defendant Ralph Fowl, a farmer by occupation, in January, 1941, ordered a new automobile from Ralph O. Nottke, a retail automobile dealer, who conducted his business under the name of Nottke Motor Sales; several weeks later, on February 8, 1941, the automobile was delivered to Fowl by Nottke, and, contemporaneous therewith, payment was made in full, in the sum of $1175; on the day previous, February 7, 1941, Nottke had obtained the car from a distributor, who withheld the manufacturer's certificate of title until payment was made; Nottke paid the distributor in full on February 14, 1941, and on February 24, 1941, the manufacturer's certificate of title was assigned and delivered to him.

After Fowl had paid for and received the car, he demanded from Nottke a certificate of title, but only received in response Nottke's promise to secure and deliver it later. On the same day that Nottke received

the assigned manufacturer's certificate of title, February 24, 1941, he presented the same, together with an application for a certificate of title, to the clerk of courts of Erie county, and received from the clerk a certificate of title, with no liens noted thereon, in the name of Nottke Motor Sales. On or about March 18, 1941, Nottke visited Fowl and secured his signature to an application for title to the car in question. This form application was signed in blank by Fowl and appeared on the back of the certificate of title issued to the Nottke Motor Sales.

Several days later, March 20, 1941, Nottke again called upon Fowl and secured his signature to an application in triplicate for license plates, which were secured later in the day. On this same day, March 20, 1941, Nottke presented to a deputy clerk in the office of the clerk of courts in Elyria, Lorain county, the certificate of title, on the back of which, as heretofore stated, appeared Fowl's application for a certificate of title signed in blank. He likewise presented an instrument containing a forged note for $874.50, ostensibly signed by Fowl, and a forged chattel mortgage on the car, which note was payable to The Erie County United Bank. The deputy clerk thereupon noted, on the application above Fowl's signature, a lien of The Erie County United Bank; and stamped the forged mortgage "recorded"; a certificate of title was then issued in Fowl's name for the car with the bank's lien noted thereon. Nottke then proceeded to The Erie County United Bank, and presented the certificate of title, and the forged note and mortgage bearing Fowl's purported signatures, whereupon the bank credited Nottke's commercial account with $825.

This banking transaction followed the pattern adopted by the bank in financing automobiles. The instrument containing the forged note and mortgage in

question was upon a form prepared by the bank. The usual procedure in the making of a loan to a purchaser of an automobile was followed, and the proceeds thereof credited to the seller's account. The officers of the bank did not see or know Fowl at the time of the alleged financing, and relied entirely on Nottke as to the honesty of the transaction.

Representatives of the bank testified that, upon completion of the business, a coupon book "showing the amount of payment and the date the payment is due," was mailed to Fowl, together with a letter stating that the bank held his note. Fowl testified that he received no such book or correspondence.

On June 20, 1941, the first payment was due. It was not paid. Nottke was notified of the default, and promised to "contact him (Fowl) at once." Nottke also stated that Fowl had not received the coupon book. Thereupon the bank called Fowl by phone and was told that a coupon book had not been received. Fowl's tesitmony is in the following language:

"A. He (executive vice president of the bank) asked me if I had bought a car of Nottke. I said I had. He asked me if I had received a coupon book. I said no. He said he would send a duplicate. He didn't ask me if I had a loan on the car.

"Q. Did you say anything to him with reference to what the coupon book was?

"A. To tell the truth about it, I didn't think much of anything about it. I was expecting to get a bill of sale through the mail."

Shortly after this conversation, Nottke made the first payment.

The evidence further shows that Fowl paid little attention to the telephone call but continued his efforts to secure a certificate of title from Nottke; not knowing that a certificate had been issued to him and was in

the possession of the bank with a lien endorsed upon it.

In July, Fowl called at the bank for the first time. He discovered the forged note and mortgage, and the bank discovered the criminal conduct of Nottke, who, by this time, had disappeared.

The bank, upon Fowl's refusal to surrender the car when no further payments were forthcoming, commenced the instant case in replevin. Defendant The Morris Plan Bank filed an answer and cross-petition, in which it asked that the automobile in the possession of the defendant Fowl be turned over to it under the terms of another note and mortgage transferred by the Nottke Motor Sales to it.

At the close of all of the evidence, the trial court dismissed the answer and cross-petition of defendant The Morris Plan Bank.

The trial proceeded against the defendant Fowl, and a jury verdict was returned in his favor, under instructions which called upon the jury to determine the question of forgery.

A motion for a new trial was filed by the plaintiff, and a motion for a new trial was also filed by the defendant The Morris Plan Bank. Each of the motions was overruled and judgment was entered upon the verdict returned by the jury. Appeals have been prosecuted to this court from that judgment.

The assignments of error of The Erie County United Bank will be considered in the order in which they were presented.

Did the Court of Common Pleas err in overruling the plaintiff's motion for a directed verdict and for judgment in its favor against the defendant Fowl?

Said appellant presents the following query: "Is there any defense against a bona fide lien holder who obtained possession of a certificate of title to a motor vehicle in good faith and *for value* where such a cer-

tificate bears a notation of such lien upon its face, placed thereon by the clerk of courts of the proper county?'' (Italics ours.) The appellee Fowl counters with the question: ''Is the clerk of courts vested with the sole power to judge as to the validity of a mortgage presented to him to be noted upon a certificate of title?''

The note and mortgage upon which the notation on the certificate of title is bottomed, were both forgeries and *void*. Nothing in this record even hints at any conduct, statements or silence on the part of Fowl which would estop him from claiming that his purported signatures are forgeries.

See 29 Ohio Jurisprudence, Negotiable Instruments, Section 256 *et seq.*

Section 8128, General Code, provides:

''When a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative. *No right to retain the instrument,* give a discharge therefor, or to enforce its payment against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.'' (Italics ours.)

It appears, therefore, that the bank has no right even to the *possession* of either the note or mortgage—both being not only forgeries but representing respectively a nonexistent debt of Fowl and the supposed security therefor. Under such circumstances, does the bank have any right to the certificate of title which it claims to hold under the provisions of the note and mortgage and the statutes extant—*i. e.,* Section 6290 *et seq.,* General Code?

The fact that a clerk of courts noted on a certificate of title to an automobile a lien upon such automobile at the instance of a vendor automobile dealer which

influenced a bank to honor a forged note and pay the proceeds therefrom to the dealer does not under the circumstances above set forth give to the bank any right of possession of the note and mortgage, the certificate of title, or the automobile.

The mere possession of a certificate of title to an automobile does not, in and of itself, give one the right to the car described thereon. If this were not so, the possession of a stolen certificate plus a forged application would give the thief the right of possession, when a certificate, predicated upon such forgery, had been issued. Certainly the legislative intent in the enactment of Section 6290 *et seq.*, General Code, was to the contrary.

It has often been properly stated that—

"In replevin actions, it is a well-settled rule of law that the person attempting to recover property must do so on the strength of his own title and not the weakness of his opponent's." *Automobile Finance Co.* v. *Munday*, 137 Ohio St., 504, at p. 523, 30 N. E. (2d), 1002.

The strength of the bank's right of possession and title is bottomed solely upon the possession of a certificate of title with a purported lien in its favor noted thereon, which purported lien records the claimed debt evidenced by a forged note and mortgage, in default.

The bank's *right* to the possession of the automobile comes into being only upon default of the person indebted under an instrument or other evidence of indebtedness which creates a lien. And if there is no debt there can be no lien, and if there is no lien there is no right of possession in the lienee. And of course this forged note creates no debt.

Assuming for the purpose of discussion that the instruments held by the bank created a valid lien upon the automobile and evidenced an actual debt owing

from Fowl to the bank, and assuming further that Fowl paid the indebtedness to the bank, could the bank, after payment in full, take the car in replevin because it retained the certificate of title with the lien thereon noted? Or could Fowl defend the action by proving payment in full? Justice permits but one conclusion.

And while the wording of Section 6290 *et seq.*, General Code, permits academic debate on the problem at hand, it is this court's duty to discover the latent meaning of this positive law and to fill in the gaps if necessary. If this process is ·called legislation, the reply is that there is no system of *jus scriptum* which has been able to escape the need· of it under certain circumstances.

In the interpretation of statutes it is the duty of courts to supply omissions, clarify uncertainties, and harmonize results with justice. And such is the duty of this court in this case. If it can be said that, under the present statutes relating to certificates of title to motor vehicles, the Legislature meant to ascribe absolute verity to the certificate issued by the clerk of courts, it does not follow that a court is precluded from ascertaining the circumstances under which a certificate was obtained; and if such circumstances show that the holder thereof is without a right to possession, it is the duty of the court to deny him relief in such an action as the one under consideration.

The purchaser Fowl can secure by appropriate court action a correction of the certificate of title, eliminating the notation of a lien. He can likewise compel a delivery to him of the certificate of title now in the possession of the bank for such correction and for custody. And by such circuitous procedure he can come into possession of the indicia of ownership which under the statutes the dealer should have secured and given him in the first instance.

The claim of the said appellant that the court erred in failing to charge the jury on the law of estoppel is not well taken. Reasonable minds could conclude only from the evidence that Fowl was not estopped to deny the validity of the note and mortgage upon which the bank paid.

It is the judgment of the members of this court that the record shows no error prejudicial to the rights of this appellant, The Erie County United Bank.

The record in case No. 1026, as stated heretofore, shows that The Morris Plan Bank of Cleveland filed an answer and cross-petition to the petition filed by The Erie County United Bank, and prayed for the possession of the disputed automobile. As also heretofore stated, Nottke had received a certificate of title to the car in question in the name of Nottke Motor Sales from the clerk of courts of Erie county on February 24, 1941.

On February 25, 1941, he appeared before the clerk of courts of Erie county and signed and filed a false affidavit and application, wherein it was stated that the original certificate of title was lost, and a duplicate certificate was requested. A duplicate certificate of title was thereupon issued upon the false representations. Nottke then prepared a note and a chattel mortgage on the car and, on February 28, 1941, presented the note, chattel mortgage, and duplicate certificate of title with the lien noted, to the Cleveland office of The Morris Plan Bank and received the proceeds of a loan. In August the bank discovered the fraud, and later, on its own motion, became a party to the replevin action instituted by The Erie County United Bank.

At the conclusion of all of the evidence, upon motions of The Erie County United Bank and Fowl to dismiss the answer and cross-petition of The Morris Plan Bank, the said motions were granted. From this

judgment The Morris Plan Bank has appealed on questions of law.

The record discloses no error prejudicial to the rights of this appellant, The Morris Plan Bank.

It is therefore the conclusion of the members of this court that the judgment from which the appeals herein are prosecuted by The Erie County United Bank and by The Morris Plan Bank should be affirmed.

*Judgment affirmed in each case.*

STEVENS and WASHBURN, JJ., concur.