PIERCE, APPELLANT, *v.* AID INVESTMENT & DISCOUNT CO., INC., APPELLEE.

(No. 4461—Decided May 1, 1950.)

*Mr. Charles T. Lawton,* for appellant.
*Mr. Marvyn R. Lachin,* for appellee.

CARPENTER, J. In this action plaintiff, George A. Pierce, seeks to replevin from defendant, Aid Investment & Discount Company, Inc., a manufacturer's certificate of title to a certain 1949 Dodge automobile and damages for its detention.

The sheriff executed the writ of replevin and took possession of the certificate. The next day the plaintiff filed a redelivery bond for $100. The defendant filed two motions, one to require the court to cancel the bond as insufficient, the other to require the plaintiff and the sheriff to return to it the certificate, but it did not tender a bond therefor as authorized by Section 12059, General Code.

The court considered both motions at a pretrial hearing and ordered them withdrawn, and that the certificate "remain in the custody of the sheriff * * * until the cause is tried on its merits." The court also ordered the trial advanced, and it began 20 days after that order.

Although this procedure on the part of the court and parties did not in every respect conform to the statute, the defendant was not prejudiced by it.

At the close of plaintiff's evidence, the court directed a verdict for defendant upon the petition, and judgment was entered thereon. From that judgment this appeal was taken as on questions of law and fact and as on questions of law. Replevin is not a chancery action and the appeal on questions of law and fact will be dismissed and the appeal retained on questions of law.

The error assigned is the directing of the verdict, and the entry of judgment thereon.

In the summer of 1949, plaintiff was the owner of a 1949 Mercury station wagon and a 1938 Nash sedan. H. D. Angevine, Inc., was a dealer in used automobiles in Toledo. It had made some effort to sell both of Pierce's automobiles for him, and in July Angevine and Pierce made a deal by which the former was to get a new Dodge automobile for Pierce. Pierce testified that H. D. Angevine, Inc., was to get a new Dodge for him in exchange for the Mercury and the Nash. Angevine testified that he was to get the new Dodge

for Pierce and deliver it and its title to him when the Mercury and Nash were sold.

On July 29, 1949, Angevine, acting for Pierce, caused him to sign an order for a Dodge to Dick Motor Sales of Maumee, a licensed Dodge dealer. The price, including $3.50 for title, was $2,318.06, which, less $50 discount given by the dealer to Angevine, was paid that day by H. D. Angevine, Inc. Dick Motor Sales, which had a manufacturer's certificate of title to the Dodge, dated July 25, 1949, assigned it on July 29, 1949, to George A. Pierce and delivered it and the automobile to Angevine, who, that day or the next, delivered the Dodge to Pierce, but did not deliver the evidence of title.

On July 30, 1949, H. D. Angevine, Inc., gave the defendant a floor plan chattel mortgage on four automobiles to secure a loan of $4,010. One of the four was the new Dodge. As shown by the mortgage, it represented $1,850 of the loan. Owner's certificates of title to the three used automobiles and the manufacturer's certificate of title to the Dodge with its assignment on the back to George A. Pierce were delivered to the defendant as security for the loan. As is the custom in Ohio, the owner's certificates of title were yellow, and the manufacturer's certificate was green. Nowhere upon the certificate did the name of H. D. Angevine, Inc., or H. D. Angevine appear.

Although Pierce has possession of the new Dodge, he has not been able to drive it because he has never had a certificate of title to it, and hence could not get a license. He asked Angevine for the certificate of title, but did not get it. Angevine testified that he refused to deliver the certificate until the Mercury and Nash were sold.

Some time in August 1949 the Mercury was sold and Pierce delivered the certificate of title either to Angevine or his purchaser. The record does not tell

us how much was realized for it. The Nash not having been sold, Angevine demanded $371 cash for it and he testified that Pierce asked him to try to sell it. Later in the fall some arrangement was made by which Pierce paid $300 cash which he gave to Angevine's attorney and it was accepted and the Nash was returned to Pierce by Angevine, but the certificate of title to the Dodge was not delivered. Thereupon this action was commenced.

Angevine insisted that the deal with Pierce was not a trade, and the evidence can well be so construed. But, if it was not a trade, clearly Angevine was the agent for Pierce in the purchase of the Dodge and in the sale of the used automobiles. Three exhibits in the record bear mute evidence of this relationship, namely, the order Angevine had Pierce sign to Dick Motor Sales for the Dodge, the invoice that firm issued to Pierce covering the details of the sale, and the manufacturer's certificate of title assigned to George A. Pierce. Being the agent for Pierce in all these transactions, even though his company by him did pay the purchase price of the Dodge, of which he got $50 on the side as a kickback, he had no authority or right to hypothecate that certificate of title to secure the loan to himself.

Under this state of facts, what right, if any, did the defendant get in that automobile and the certificate which evidenced the title to it? On two bases it could get none. By virtue of simple common-law principles and common sense, that certificate of title with the assignment upon it to Pierce was notice to defendant that Pierce was the owner of the Dodge and that Angevine had no legal right to it. Defendant can not be heard to say that its agent who made the loan did not turn the certificate over and hence did not know about the assignment, as they testified. On the face of the

certificate, the title was in Dick Motor Sales. The defendant was not so naive in the business that it did not know that such assignments were written on the back on forms printed for that purpose.

The other answer to the question is Section 6290-4, General Code, which is as follows:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter."

This applied to H. D. Angevine, Inc., H. D. Angevine and the defendant. Under that section none of them could "acquire any right, title, claim or interest in or to said motor vehicle," which any court could recognize. *Mielke* v. *Leeberson,* 150 Ohio St., 528, 83 N. E. (2d), 209. This court had occasion to apply this statute in the *Mielke case* when it was before it and in the following reported decisions: *Crawford Finance Co.* v. *Derby,* 63 Ohio App., 50, 25 N. E. (2d), 306; *Fredericks* v. *Birkett L. Williams Co.,* 68 Ohio App., 217, 40 N. E. (2d), 162; *Erie County United Bank* v. *Bogart,* 75 Ohio App., 250, 61 N. E. (2d), 811; *Asso-*

*ciales Investment Co.* v. *LeBoutillier,* 69 Ohio App., 62, 42 N. E. (2d), 1011.

A similar case was *Erie County United Bank* v. *Fowl,* 71 Ohio App., 220, 49 N. E. (2d), 61. In each of these cases except the *Mielke* and *Fredericks cases,* a dishonest automobile dealer was in the middle and caused loss to one of the parties.

In directing the verdict for the defendant on plaintiff's petition, the court erred and the judgment it entered on that verdict is reversed, and on the undisputed facts the judgment which the court should have entered for the plaintiff for replevin as prayed for will be entered. As to the prayer for damages, the cause will be remanded for further proceedings.

*Judgment reversed.*

CONN and FESS, JJ., concur.