SCHWARTZ ET AL., APPELLEES, *v.* MCATEE, APPELLANT.

[Cite as Schwartz *v.* McAtee (1986), 22 Ohio St. 3d 14.]

(No. 85-604—Decided January 29, 1986.)

*Stephenson, Stephenson & Carrothers* and *Richard L. Stephenson,* for appellees.

*Johnson & Johnson Co., L.P.A.,* and *Michael C. Johnson,* for appellant.

*Crabbe, Brown, Jones, Potts & Schmidt* and *William J. Brown,* urging affirmance for *amicus curiae,* Ohio Manufactured Housing Assn.

*Kenneth J. Kowalski* and *Edward G. Kramer,* urging reversal for *amici curiae,* Housing Advocates, Inc. et al.

DOUGLAS, J. The question in this case is whether a manufactured home park operator can successfully maintain an action in forcible entry and detainer against a tenant who has neither defaulted in payments of rent nor breached the terms of his rental agreement.

## I

Mobile homes are a twentieth century creation, but today's manufactured homes bear little resemblance to yesterday's trailers. "Mobile" Homes? — Public and Private Controls (1982), 29 Wayne L. Rev. 177, 180. The first trailers were without toilet or bathing facilities and could be pulled by passenger cars. *Id.* at 178-181. Over the years, the physical characteristics of manufactured homes have changed dramatically.

"* * * Current mobile homes average over 700 square feet for a single mobile home and approximately 1,500 square feet for a double-wide model. Complete with all modern conveniences, current models exhibit many options that are not readily associated with trailers, including gabled roofs, utility rooms with washing machines and dryers, dishwashers, fireplaces, and attached two-car garages." *Id.* at 179-180.

These features coupled with the relatively high cost of conventional site-built homes, have made manufactured homes an attractive source of affordable housing for millions of Americans (Kramer, Buchanan & Sobol, Reforming the Mobile Home Tenant-Landlord Relationship: The Ohio Experience [1981], 30 Cleve. St. L. Rev. 57), particularly the less affluent and older and younger citizens. In fact, statistics show that almost seventy-seven percent of the household heads in manufactured homes earn less than $15,000 per year and about seventy percent of them are younger than thirty-five or older than fifty-five. *Id.* at 58.

"Ohio has experienced its share of this growth in mobile home living. Ohio already ranks among the top ten states for the total number of existing mobile homes. In addition, the sale of new and used mobile homes in Ohio has grown into a multi-million dollar business." *Id.* at 59. According

to the 1980 Census of Housing, there are 146,412 mobile homes in Ohio. This number equates to about three percent of all mobile homes in the United States. United States Department of Commerce, Bureau of the Census, Census of Housing, Mobile Homes (1980) 1. In comparison, Florida, a recognized retirement state, had 457,698 mobile homes or about ten percent of the nationwide total. *Id.* The same census shows that 3.6 percent of all housing units in Ohio are mobile homes. *Id.* at 2. Eighty-seven percent of the mobile homes in Ohio are occupied year round. *Id.*

In 1977, the Ohio General Assembly responded to the growing popularity of manufactured home living by enacting legislation found in R.C. Chapter 3733 regulating the relationship between manufactured home landlords and their tenants. Many of the provisions of the landlord-tenant law for house trailer parks are patterned after R.C. Chapter 5321, the landlord-tenant law for apartment tenants.[1] The similarities between these two chapters can be seen in the following chart:

| Landlord-Tenant R.C. Section | Subject Matter | Manufactured Homes R.C. Section |
|---|---|---|
| 5321.01 | Definitions | 3733.01 |
| 5321.02 | Retaliation | 3733.09 |
| 5321.03 | Landlord Remedies | 3733.091 |
| 5321.04 | Obligations of Landlord | 3733.10 |
| 5321.05 | Obligations of Tenant | 3733.101 |
| 5321.06 | Rental Agreement Terms | 3733.11 |
| 5321.07 | Notice to Remedy Conditions | 3733.12 |
| 5321.08 | Duties of Clerk of Court | 3733.121 |
| 5321.09 | Landlord Apply for Release of Rent | 3733.122 |
| 5321.10 | Partial Release of Rent | 3733.123 |
| 5321.11 | Tenant Noncompliance | 3733.13 |
| 5321.12 | Damages | 3733.14 |
| 5321.13 | Rental Agreement Terms Barred | 3733.15 |
| 5321.14 | Unconscionability | 3733.16 |
| 5321.15 | Restrictions on Landlord | 3733.17 |
| 5321.16 | Security Deposits | 3733.18 |
| *5321.17* | *Termination of Periodic Tenancies* | *no provision* |
| 5321.18 | Data on Owner and Operator | 3733.19 |
| 5321.19 | Conflicting Ordinances | 3733.20 |

This chart demonstrates that all *but one* of the R.C. Chapter 5321 pro-

---

[1] The General Assembly did not specifically include manufactured homes within the meaning of R.C. Chapter 5321. This led some courts to hold that R.C. Chapter 5321 did not apply to manufactured home owner-tenants. *Farley* v. *Reynolds Village Mobile Home Park* (Dec. 3, 1976), Lucas App. No. L-76-100, unreported; *Birchwood Manor Mobile Home Park* v. *Howard* (Feb. 6, 1978), Portage App. No. 758, unreported. It has been argued that these court decisions contributed to the General Assembly's desire to enact remedial legislation to protect manufactured homeowners. Kramer, Buchanan & Sobol, *supra,* at 60.

visions have a "sister" provision in R.C. Chapter 3733. The only one that does not is R.C. 5321.17, dealing with termination of periodic tenancies. R.C. 5321.17 provides:

"(A) The landlord or the tenant may terminate or fail to renew a week-to-week tenancy by notice given the other at least seven days prior to the termination date specified in the notice.

"(B) The landlord or the tenant may terminate or fail to renew a month-to-month tenancy by notice given the other at least thirty days prior to the periodic rental date.

"(C) This section does not apply to a termination based on the breach of a condition of the rental agreement or the breach of a duty and obligation imposed by law."

The General Assembly chose not to put a similar provision in R.C. Chapter 3733 and instead created formidable restrictions on the ability of manufactured home park operators to evict tenants. These restrictions were made necessary by the fundamental differences between apartment or conventional house tenants and manufactured home tenants. When an apartment or home tenant is evicted, the tenant simply needs to move his belongings to his new home. While this may present some difficulties, they are insignificant when compared to the dilemma faced by the manufactured home tenant who may be unable to find another park and who faces expensive storage or prohibitive moving costs. Clearly, in many instances "mobile" homes are not mobile at all. In reality, they are *immobile homes*. Once they are put in place, they require a considerable amount of disassembly before they can be transported to a new location. This has led some jurisdictions to specifically find that "mobile" homes have become immobile. In *Corning* v. *Ontario* (1953), 204 Misc. 38, 121 N.Y. Supp. 2d 288, the court made the following statement at 40, 121 N.Y. Supp. 2d at 291-292:

* * * Mobile it was when used upon the highway, but mobility ceased when it was removed from the highway, attached to the soil and occupied as living quarters. A metamorphosis has occurred; the mobile vehicle has become a fixed residence." Cf. *Helena* v. *Country Mobile Homes, Inc.* (Ala. 1980), 387 So. 2d 162 (the structure in question is a modular, not a mobile home); *Woodstock* v. *Boddy* (1978), 240 Ga. 477, 241 S.E. 2d 236 (ordinance defining mobile home as vehicle or portable structure is unconstitutionally vague).

The history of R.C. Chapter 3733 makes it clear that the General Assembly was undoubtedly aware of the immobile nature of today's "mobile" homes. The legislature not only created obstacles to the landlord's authority to evict, but even changed the statute's terminology from "trailer," which describes a portable structure, to "manufactured home," which describes a permanent structure. We must remain mindful of this legislative history when considering the arguments of the parties herein. Furthermore, we know that R.C. Chapter 3733 is a remedial

statute and, therefore, must be liberally construed in order to promote its object and assist the parties in attaining justice. R.C. 1.11.

## II

Appellees contend that appellant could be evicted because he was a holdover tenant within the meaning of R.C. 3733.091(A)(3) and 1923.02(A)(1). They base this argument on the fact that they "* * * served notice upon the Appellant as to a '30 day notice to vacate the premises' by June 30, 1984, *as required by Ohio Revised Code Sec. 5321.17(B),* with regard to termination of periodic tenancies * * *. When Appellant did not vacate the premises, the Appellees served upon Appellant a three (3) day notice required under Ohio Revised Code Sec. 1923.04, prior to the commencement of an action under Chapter 1923 * * *." (Emphasis added.)

The first flaw in appellees' argument is their contention that they caused appellant to become a holdover tenant through operation of R.C. 5321.17. While R.C. 5321.17(B) does provide that a month-to-month tenancy can be terminated by giving thirty days' notice prior to the periodic rental date, appellees' analysis ignores the fact that R.C. Chapter 5321 does not govern the relationship between manufactured home park operators and their tenants.[2] The relevant legislation is R.C. Chapter 3733. R.C. 3733.13 is the *only* provision in that chapter which provides for the termination of tenancies. The section provides:

"If the tenant fails to fulfill any obligation imposed upon him by section 3733.101 of the Revised Code that materially affects health and safety, the park operator may deliver a written notice of this fact to the tenant specifying the act and omission that constitutes noncompliance with such provisions and that the rental agreement will terminate upon a date specified in the written notice not less than thirty days after receipt of the notice. If the tenant fails to remedy the condition contained in the notice, the rental agreement shall then terminate as provided in the notice."

Thus, a tenant in a manufactured home park cannot become a holdover tenant unless: (a) he fails to fulfill an obligation imposed by R.C. 3733.101, provided it materially affects health and safety; (b) the park operator gives the tenant written notice of noncompliance in accordance with R.C. 3733.13; and (c) the tenant fails to remedy the noncompliance by the date specified in the notice which shall not be less than thirty days. In the case at bar, appellees served appellant with a citation notice on May 2, 1984. It provided that he had two days to remedy his noncompliance. On May 11, 1984 — just nine days later — appellees unilaterally terminated appellant's rental agreement and ordered him to vacate the premises. Since it is clear that appellees failed to follow the procedure mandated by R.C. 3733.13, they did not cause appellant to become a holdover tenant.

The next flaw in appellees' argument is their contention that they can

---

[2] R.C. Chapter 5321 would apply where the tenant is not also the owner of the manufactured home.

bring eviction proceedings pursuant to provisions in R.C. Chapter 3733. Appellees are clearly wrong. R.C. Chapter 3733 does not and cannot confer jurisdiction on a court in an action for forcible entry and detainer. Any claim for such relief must be alleged in accordance with the terms of R.C. Chapter 1923. In fact, R.C. 3733.091, upon which appellees rely, specifically refers a park operator seeking possession to R.C. Chapter 1923 for purposes of bringing such an action. R.C. 1923.02, effective September 20, 1984,[3] deals with persons subject to an action for forcible entry and detainer. The specific subsection governing manufactured home tenants is R.C. 1923.02(A)(10). It states:

"(A) Proceedings under Chapter 1923 of the Revised Code, may be had:

"* * *

"(10) Against manufactured home tenants who have defaulted in the payment of rent or breached the terms of a rental agreement with a manufactured home park operator * * *."

Since there was no allegation in appellees' complaint that appellant defaulted in the payment of rent or breached a term of his rental agreement, the complaint failed to state a claim upon which relief could be granted. The language of R.C. 1923.02(A)(10) is clear, unequivocal and unambiguous. Appellees did not allege that which was required to be alleged.

Appellees contend, however, that since appellant rented the premises pursuant to an oral month-to-month lease, they had the authority to unilaterally cancel the lease, without any cause or justification, and then bring an action to recover possession of the premises. The court of appeals agreed and stated:

"When read *in pari materia,* the provisions of Section 1923.02 in no way limit the remedy granted to mobile home park operators in Section 3733.091. In effect, Section 1923.02 provides for an additional use of forcible entry and detainer under the provisions of subsection A(10). The *Ward* [Lucas County Appellate Court's] * * * reading of Section 1923.02 renders nugatory and without meaning Section 3733.091(A)(3); such an effect should always be avoided. * * *"

The court of appeals correctly determined that R.C. 1923.02 and 3733.091 related to the same subject matter and should, therefore, be construed together, *i.e., in pari materia. Volan* v. *Keller* (1969), 20 Ohio App.

---

[3] At the time this case went to trial, R.C. 1923.02(A)(10) read:

"(A) Proceedings under Chapter 1923. of the Revised Code, may be had:

"* * *

"(10) Against house trailer tenants who have defaulted in the payment of rent or breached the terms of a rental agreement with a house trailer park operator;"

The abandonment of the "house trailer" term and its replacement by "manufactured home" terminology manifests the legislature's recognition that modern "mobile" homes are actually immobile.

2d 204, 206 [49 O.O.2d 286]. The court of appeals, however, failed to recognize that statutes read *in pari materia* should be reconciled, if possible (*State, ex rel. O'Neil,* v. *Griffith* [1940], 136 Ohio St. 526 [17 O.O. 160]), so as to render their contents operative and valid. See, generally, *Tighe* v. *Diamond* (1947), 82 Ohio App. 487, 492 [38 O.O. 110], affirmed (1948), 149 Ohio St. 520 [37 O.O. 243]. While the court of appeals gave full force and effect to R.C. 3733.091 and 1923.02(A)(1), it rendered R.C. 1923.02(A)(10) "nugatory and without meaning."

While on their face, R.C. 1923.02(A)(10) and 3733.091(A)(3) appear to be in conflict, they are not. As set forth above, the sections can be easily, reasonably and logically harmonized and, where possible, it is a court's responsibility to do so. *Erie County United Bank* v. *Fowl* (1942), 71 Ohio App. 220, 227 [26 O.O. 37].

### III

The question has been raised as to whether or not a holding, such as we make today, could, in any way be construed to be a granting of a tenancy for life to mobile home park tenants. A review of R.C. 3733.11 unequivocally answers the question.

Pursuant to R.C. 3733.11(C), "[a] park operator shall promulgate rules governing the rental or occupancy of a house trailer lot. The rules shall not be unreasonable, arbitrary or capricious. A copy of the rules and any amendments to them shall be delivered by the park operator to the tenant prior to his signing the rental agreement. A copy of the rules and any amendments to them shall be posted in a conspicuous place upon the house trailer park grounds."

Thus, a park operator may make *any* rule that is not unreasonable, arbitrary or capricious or, of course, is not in conflict with other specific statutory sections. See, *e.g.,* R.C. 3733.11(D) through (H), (J), and (K). Further, R.C. 3733.11(B) provides, in part, that "* * * [n]o fees, charges, assessments, or rental fees so disclosed may be increased nor rules changed by a park operator *without specifying the date of implementation of the changed* fees, charges, assessments, *rental fees, or rules,* which date shall be not less than thirty days *after written notice* of the change and its effective date to *all tenants* in the house trailer park. * * *" (Emphasis added.) Therefore, it is also clear that a park operator can even change or supplement *existing* rules so long as proper notice is given, the changes apply equally to all tenants, and the amended rules are not unreasonable, arbitrary or capricious.[4]

Thus, as an example, if the park operator should desire to promulgate a rule which provides that *all* of the park tenants, within a reasonable time, would be required to remove their homes so that the property could be sold for the development of a shopping center, such rule not being

---

[4] For yet an additional protection for a mobile home park operator, see R.C. 3733.11(L).

unreasonable, arbitrary or capricious and being equally applied to all tenants, would be enforceable and would defeat any argument of lifetime tenancy. Any tenant not complying with the reasonable notice to remove his or her trailer home would be in violation of one of the terms of the rental agreement (see R.C. 1923.01[B][5]) and thus subject to a forcible entry and detainer action as provided for in R.C. 1923.02(A)(10).

For the foregoing reasons, the judgment of the court of appeals is reversed. Appellees' complaint, having failed to state a claim upon which relief can be granted, is dismissed.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, C. BROWN and WRIGHT, JJ., concur.

HOLMES, J., concurs in part.

HOLMES, J., concurring in part. I concur in the syllabus law as pronounced in this case, and also concur in the judgment. However, in the stance of this case, I would reverse the judgment of the court of appeals and remand this matter to the trial court for certain findings. At the conclusion of the trial of this matter, the appellees-owners of the park moved the court for permission to amend the complaint to include the allegation that appellant had violated park regulations relative to keeping a dog on the premises. Appellant contested the amendment, and the municipal court judge did not formally rule upon such motion. However, the judge stated in his decision that "[h]ad the court otherwise interpreted the relevant sections of Ohio law, the Motion to amend the Complaint to allege a violation of the rental agreement pertaining to the harboring of animals would suffice to justify the granting of restitution of the premises to the Plaintiffs."

Accordingly, the judgment of the court of appeals should not only be reversed, but the cause should be remanded to the trial court for a determination of whether the complaint could have been amended at trial to allege an eviction for cause, and whether, based upon such allegation, the tenant could have been evicted from the park premises.