HAMLET MOBILE HOME PARK, Appellant,

v.

SIGMUND, Appellee.

[Cite as *Hamlet Mobile Home Park v. Sigmund* (1997), 118 Ohio App.3d 29.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 96–P–0134.

Decided Jan. 28, 1997.

**30**

[redacted]

*Dennis Reimer*, for appellant.

*Kevin T. Poland*, for appellee.

CHRISTLEY, Judge.

This is an accelerated calendar appeal, taken from a final judgment of the Ravenna Division of the Portage County Municipal Court. Appellant, the Hamlet Mobile Home Park, seeks the reversal of the court's decision to enter judgment in favor of appellee, Steven Sigmund, as to its complaint for forcible entry and detainer.

Appellant operates a park for manufactured homes, located on State Route 59 in Ravenna, Ohio. Appellee and his family have lived on Lot C–6 of the park since 1988. Appellee's tenancy was never reduced to a written lease; instead, the tenancy has been subject to an oral month-to-month lease.[1]

During appellee's tenancy, appellant adopted and enforced certain park rules, pursuant to R.C. Chapter 3733. The most recent set of these rules took effect in February 1994. The rules provided, *inter alia*, that a tenant could not have a trailer or recreational vehicle on his lot. The rules also prohibited a tenant from repairing a motor vehicle on his lot.

Since 1988, appellee had been cited for a number of violations of the park rules, including violations of the two foregoing rules. In November 1994, appellee was cited for having a "four-by-eight" trailer and a truck cap on his lot. In February 1995, he was cited for having a "utility" trailer on his lot.

---

1. Appellee testified that he purchased the mobile home itself from appellant in August 1988. Accordingly, appellee owned the home itself, and rented only the lot from appellant. Thus, he was an "owner" as opposed to a "tenant" per R.C. 3733.01(J) or (K).

On June 6, 1995, appellee was served with a three-day notice to vacate his lot in the park. The notice alleged that appellee had recently committed another violation of the park rules by performing repairs on a motor vehicle on his lot. The notice further stated that this was appellee's second material violation of the park rules within the last six months.

When appellee did not vacate the premises within three days, appellant initiated the instant action for forcible entry and detainer. As the basis for its complaint, appellant cited appellee's two most recent violations of the park rules.

An abbreviated bench trial was held in January 1996. As part of its case, appellant presented evidence as to both the February 1995 incident and the June 1995 incident. In relation to the former, appellant's evidence tended to show that appellee had parked a trailer in front of his manufactured home for approximately three days, and that part of the trailer had extended over the sidewalk and slightly onto the road. In relation to the latter, appellant's evidence indicated that appellee had a vehicle resting on jacks for approximately three days.

In its judgment entry, the trial court began its analysis by concluding that, pursuant to R.C. Chapter 3733, a tenant of a manufactured home park could be evicted for violating park rules only if both violations had *materially affected the health and safety of the other tenants.* The court then found that, even though appellant had established that appellee had violated the instant park rules twice during a six-month period, it had not shown that the first violation in February 1995 had materially affected the health and safety of the other park tenants. Accordingly, the court entered judgment in favor of appellee on appellant's complaint.

In appealing from the foregoing judgment, appellant has assigned the following as error:

"1.   The trial court was in error in applying the standard that in order to grant an eviction to a manufactured home park owner against a manufactured home tenant, a violation of a park rule must materially affect the health and safety of the individual or the park.

"2.   The judgment of the court was not substantiated by the weight of the evidence.

"3.   The court was in error in holding for the appellee and should have rendered judgment for the appellant."

Appellant's first assignment constitutes the crux of the instant appeal. Under that assignment, appellant contends that the trial court did not apply the correct standard for determining whether appellee could be evicted from the park for violating certain park rules. Specifically, appellant argues that the court erred in holding that a tenant in a manufactured home park could be evicted only when

his violation materially affected the health and safety of the other tenants. This argument is well taken.

The basic procedure for maintaining an action for forcible entry and detainer is set forth in R.C. Chapter 1923. R.C. 1923.01(A) grants a municipal court the authority to evict a tenant from a leasehold if the tenant's possession is unlawful. However, in order for this type of action to lie, the landlord must initially allege that the action falls within one of the twelve factual circumstances enumerated in R.C. 1923.02(A). R.C. 1923.02(A)(10) states that an action in forcible entry and detainer can be maintained against a manufactured home park resident who has not paid his rent or has breached the terms of his rental agreement.[2] See, generally, *Moonlight Mobile Home Parks, Inc. v. Eichner* (Oct. 29, 1993), Lucas App. No. L–93–028, unreported, 1993 WL 434584.

Consistent with the foregoing general provisions, R.C. 3733.091(A)(4) provides that an operator of a manufactured home park can bring an action under R.C. Chapter 1923 against a park resident if the resident has violated any "rule" of the park which has been properly adopted pursuant to the public health council. Before the resident can be evicted, though, he must be given notice of the violation under R.C. 3733.13. The latter statute states:

"If a resident commits a *material* violation of the rules of the manufactured home park, of the public health council, or of applicable state and local health and safety codes, the park operator may deliver a written notification of the violation to the resident. The notification shall contain all of the following:

" * * *

"(C) A statement that the violation was material and that if a second material violation of any park or public health council rule, or any health and safety code, occurs within six months after the date of this notice, the rental agreement will terminate immediately;

" * * *

"If the resident remedies the condition described in the notice, whether by repair, the payment of damages, or otherwise, the rental agreement shall not terminate. The park operator may terminate the rental agreement immediately if the resident commits a second material violation of the park or public health council rules, * * * subject to the defense that the park rule is unreasonable, that the park or public health council rule, or health or safety code, is not being

---

2. A "resident" is defined as "a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others. It includes both tenants and owners." R.C. 3733.01(L).

enforced against other manufactured home park residents, or that the two violations were not willful and not committed in bad faith." (Emphasis added.)

In applying R.C. 3733.091(A)(4) and 3733.13, the courts of this state have held that an action under R.C. Chapter 1923 can be brought against the resident of the park if the resident has committed two "material" violations of the park rules within six months. Moreover, it has been held that, once the plaintiff-operator has established the existence of the two material violations, the resident can avoid the eviction only by presenting evidence as to one of the defenses listed in R.C. 3733.13. *Moonlight Mobile Home Parks; W. Ridge Green Co. v. Ortiz* (Aug. 10, 1994), Lorain App. No. 94CA005819, unreported, 1994 WL 432162.

As was noted above, as part of its analysis in the instant case, the trial court held that a resident of a manufactured home park could not be evicted solely because he had committed two material violations of the park rules within six months; instead, the trial court held that the two material violations also had to affect the health and welfare of the other tenants before a writ of restitution would lie. Although not expressly stated in the trial court's judgment, this holding appears to have been based upon the decision of the Supreme Court of Ohio in *Schwartz v. McAtee* (1986), 22 Ohio St.3d 14, 22 OBR 12, 488 N.E.2d 479.

In *Schwartz,* the primary issue before the Supreme Court was whether the resident of the park had become a holdover tenant. As part of its analysis, the court noted that, pursuant to R.C. 3733.13, a written notice of a violation had to be given to the resident when he had failed " 'to fulfill any obligation imposed upon him by section 3733.101 of the Revised Code that materially affects health and safety.' " *Id.* at 19, 22 OBR at 16, 488 N.E.2d at 483. Based upon the specific language employed in R.C. 3733.13 at that time, the court concluded that a resident of a park could become a holdover tenant only if, *inter alia,* he had committed a violation which materially affected the health and safety of the other tenants.

As to this point, this court would merely note that the *Schwartz* decision was based upon a prior version of R.C. 3733.13. The present version of R.C. 3733.13, effective February 25, 1987, does not require that the violation of the park rules materially affect the health and safety of the other tenants. Instead, a written notice of a violation can be given to a resident if he has committed a material violation of the park rules. In addition, the present version of the statute provides that the rental agreement can be terminated when the resident commits two material violations within six months.

Given that the *Schwartz* decision was based upon the specific language in the prior version of R.C. 3733.13, it follows that any new decision rendered by the Supreme Court on the "holdover tenant" issue would be predicated upon the express language of the new version. Accordingly, this court concludes that, in

order to form the basis of an action for forcible entry and detainer, the two violations do not have to materially affect the health and safety of the other tenants. Instead, such an action will lie if the resident has committed two material violations of the park rules.

Because the trial court applied the wrong standard of law in determining whether judgment should be entered in favor of appellee, appellant's first assignment of error is well taken.

Appellant's final two assignments are predicated upon its analysis under the first assignment. Under its second assignment, appellant asserts that the trial court's judgment was against the manifest weight of the evidence. Under the third assignment, appellant contends that the judgment was incorrect as a matter of law.

Given our holding under the first assignment, it follows that the merits of the last two assignments have been rendered moot. Because the trial court followed an incorrect standard in determining the merits of this case, the case must be remanded so that the court can apply the correct standard of law to the facts before it. As to this point, this court would emphasize that, although the trial court specifically found in its judgment that appellant had committed two violations of the park rules, the court did not make a finding whether the two violations constituted material violations of the park rules.

Because the merits of the final two assignments have been rendered moot, they are without merit.

Based upon our holding under the first assignment of error, the judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and NADER, J., concur.