DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Ottawa County Court of Common Pleas which granted the motion for summary judgment filed by appellees, Bernard and Linda LeMay, and denied the motion for summary judgment filed by Richard and Phyllis Seckler, and North Shore Estates Mobile Homes Sales, etc. (collectively referred to as "appellants"). Appellants appeal from the decision of the trial court entered on February 10, 2003, which was journalized on April 3, 2003, and corrected on May 5, 2003 to include Civ.R. 54(B) language, and from the trial court's final entry, journalized on June 25, 2004, awarding attorney fees to appellees in the amount of $6,144. For the reasons that follow, we affirm the decisions of the trial court.
 {¶ 2} In 1976, appellees purchased a 1972 Cameron home, approximately 14' x 60' in dimension, from North Shore Estates Mobile Home Sales, and located in North Shore Estates ("the park"). In 1982, appellants bought the park from John and Diane Ritzman. In 1996 and early 1997, appellants substantially revised the park rules. Appellants stated that the rules and regulations were modeled on rules suggested by the Ohio Manufactured Housing Association. Included in the park's rules was the following rule ("Rule 5"), which is in contention in this case:
 {¶ 3} "5. The transfer of ownership of any home in the park must be approved, in writing, by the management at least ten days prior to the actual transfer. Any transfer of ownership taking place without proper written approval will result in termination of tenancy and the home having to be removed from the park. Each resident shall bring a proposed or new purchaser to the park management to complete all applications for residency and credit. The purchaser/new resident must meet all park rules and regulations requirements, credit approval and personal character requirements. The purchaser/new resident must agree to all park rules and regulations and evidence that agreement in writing. Pursuant to Ohio Revised Code Section 3733.101(B) park management shall have the right to inspect the interior and exterior of a manufactured home prior to approving a prospective purchaser as an acceptable resident in that manufactured home. The home must meet all local code requirements, including electrical, health, safety and building, but not limited thereto. The purchaser, if approved, shall be required to make any repairs or changes deemed necessary by park management to improve and upgrade to park standards the manufactured home and/or premises. Park management reserves the right to terminate a rental agreement and require removal or repair of a manufactured home based solely on the age, deterioration, obsolescence, or appearance of the manufactured home. Park management has the right to accept or reject a prospective purchaser of a manufactured home as a resident based solely on the age, deterioration, or obsolescence of the interior or exterior of the manufactured home. Asa uniform guideline, a prospective purchaser of a manufactured home builtprior to 1977 will not be approved as an acceptable resident with thatmanufactured home." (Emphasis added.)
 {¶ 4} In 2000, appellees spent $6,500 on improvements for their home, including new siding, a pitched shingled roof and coordinating shutters, in compliance with park rules. In addition, appellees installed new skirting, windows, carpeting, a furnace, central air, and remodeled the bathroom. The fuse box was also upgraded to a circuit breaker box. In January 2002, appellees sought to have their home listed for sale with appellants. Without inspecting the home, and based upon the home's age, appellants informed appellees that, in conformance with Rule 5, if sold, the home would have to be moved out of the park and that no prospective purchaser would be approved as a resident.
 {¶ 5} Appellees attempted to have their home listed with a licensed realtor, Warren Felber. However, based upon appellants' rule that the home must be moved if sold, Felber refused to enter into a listing contract for the home. Although Felber believed it could be sold in its present location, if it had to be moved, the listing of the home "would be a waste of [his] time." Appellees therefore listed the home for sale themselves, but never received any offers.
 {¶ 6} Appellees' home was inspected by Geoffrey A. Bailey of Tri County Appraisal. Bailey listed the home's condition as "Average to Good; Overall Rating Good." Bailey estimated the economic life of the home to be "25 to 30 years." In its present location, Bailey stated that the home could be sold for $25,500, but, if moved, would only have a value of $3,900 to $6,200.
 {¶ 7} On March 25, 2002, appellees filed a complaint seeking a declaration of their rights, pursuant to R.C. Chapter 2721, that Rule 5 of the "Community Rules and Regulations" of appellants' manufactured home park was in violation of R.C. 3733.11. Appellees additionally requested an injunction against appellants to allow them to sell their 1972 mobile home within the park. Both parties filed motions for summary judgment.
 {¶ 8} The trial court held that appellants' Rule 5 violates R.C.3733.11(C) because "it arbitrarily prohibits the rental and occupancy of lots in a mobile home park based on the age of the home that occupies that lot." As such, the trial court granted appellees' motion for summary judgment. Eventually, although the trial court found that appellees failed to establish actual damages, the trial court awarded appellees' attorneys' fees in the amount of $6,144, pursuant to R.C. 3733.11(I). From the trial court's decisions, appellants raise the following assignments of error on appeal:
 {¶ 9} "1. The trial court erred in holding that appellants' Rule 5 is arbitrary and therefore violates R.C. 3733.11(C).
 {¶ 10} "2. The appellees are not entitled to the protection of R.C.3733.11(H) as they do not own a manufactured home as defined by Ohio Law and a park operator is not required to allow the owner of a mobile home to sell the mobile home within the manufactured home park.
 {¶ 11} "3. The trial court erred in awarding appellees attorney fees under R.C. 3733.11(I) when the appellees failed to establish by a preponderance of the evidence that they had suffered any actual damages."
 {¶ 12} In reviewing a motion for summary judgment, an appellate court must apply the same standard of law as the trial court. Lorain Natl. Bankv. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 13} R.C. 3733.11(C) states that "A park operator shall promulgate rules governing the rental or occupancy of a lot in the manufactured home park. The rules shall not be unreasonable, arbitrary, or capricious. A copy of the rules and any amendments to them shall be delivered by the park operator to the tenant or owner prior to signing the rental agreement. A copy of the rules and any amendments to them shall be posted in a conspicuous place upon the manufactured home park grounds." (Emphasis added.)
 {¶ 14} We find that R.C. 3733.11(C) applies in this case because appellants are park operators who promulgated rules governing the rental or occupancy of a lot in their manufactured home park. A "Park operator" is an operator of a manufactured home park.
R.C. 3733.01(N). A "manufactured home park" means "any tract of land upon which three or more manufactured or mobile homes used for habitation are parked, either free of charge or for revenue purposes, and includes any roadway, building, structure, vehicle, or enclosure used or intended for use as a part of the facilities of the park." R.C. 3733.01(A).
 {¶ 15} As referred to in R.C. 3733.01(D), a "manufactured home" means "a building unit or assembly of closed construction that is fabricated in an off-site facility and constructed in conformance with the federal construction and safety standards established by the secretary of housing and urban development pursuant to the `Manufactured Housing Construction and Safety Standards Act of 1974,' 88 Stat. 700, 42 U.S.C.A. 5401, 5403, and that has a permanent label or tag affixed to it, as specified in42 U.S.C.A. 5415, certifying compliance with all applicable federal construction and safety standards." R.C. 3781.06(C)(4). Whereas, a "mobile home" is defined as "a building unit or assembly of closed construction that is fabricated in an off-site facility, is more than thirty-five body feet in length or, when erected on site, is three hundred twenty or more square feet, is built on a permanent chassis, is transportable in one or more sections, and does not qualify as a manufactured home * * *." R.C. 4501.01(O).
 {¶ 16} In their first assignment of error, appellants argue that the trial court erred in finding that Rule 5 was unreasonable, arbitrary or capricious, in violation of R.C. 3733.11(C). In particular, appellants assert that the purpose of Rule 5 was to ensure compliance within their park with "the stringent federal construction and safety standards established by the Secretary of Housing and Urban Development pursuant to the Manufactured Housing Construction and Safety Standards Act of 1974." Appellants assert that compliance with the 1974 standards, which became effective in 1977, is not an unreasonable, arbitrary or capricious basis for determining whether a home can remain in their park.
 {¶ 17} In White v. Superior Mobile Homes, Inc. (Dec. 10, 1999), 11th Dist. No. 98-T-0011, the court held that an objective standard based on "age" alone to maintain the aesthetics, safety and standards of a park violated R.C. 3733.11(C). White noted that the park operator had hoped to avoid any discretionary determinations regarding a home's safe condition or lack thereof by implementing a 20 year rule; however, White held that "[f]ailure to make a discretionary determination is the essence of arbitrariness." The court further stated, "A manufactured home's age does not necessarily speak to its safety or quality, and one cannot say that a home under twenty years of age is always better than a home over twenty years of age." See, also, Czerwonko v. Sahara Mobile Home Park Sales,Inc. (2000), 137 Ohio App.3d 266.
 {¶ 18} We agree with the rationale in White and Czerwonko. Although appellants assert that Rule 5 seeks to ensure compliance with federally mandated safety standards, we find that Rule 5 fails to state such. Rather than allowing for an owner to establish that their home was built, or improved, to be in compliance with HUD's Safety Standards Act of 1974, Rule 5 requires a home to be removed from the park, upon sale to a new owner, based solely upon the age of the structure. As held inWhite, such a determination lacks discretion and, thus, is the essence of arbitrariness. Accordingly, we agree with the trial court that appellants' Rule 5 implements an arbitrary standard for determining whether a manufactured home may stay within the park when it is sold. As such, we find that Rule 5 violates R.C. 3733.11(C), and that appellees were properly granted summary judgment as a matter of law. Appellants' first assignment of error is therefore found not well-taken.
 {¶ 19} Appellants argue in their second assignment of error that appellees are not entitled to the protection of R.C. 3733.11(H), as they do not own a manufactured home as defined by Ohio law, and a park operator is not required to allow the owner of a mobile home to sell the mobile home within the manufactured home park. As we have previously held, pursuant to R.C. 3781.06(C)(4) and R.C. 4501.01(O), appellees' home is statutorily defined as a "mobile home" rather than a "manufactured home." Nevertheless, we find that the trial court granted judgment to appellees solely on the basis of R.C. 3733.11(C), not R.C. 3733.11(H). As such, pursuant to our affirmance of the trial court's decision with respect to R.C. 3733.11(C), we find that it would be advisory and unnecessary to additionally determine whether appellants are also in violation of R.C. 3733.11(H). Accordingly, appellants' second assignment of error is also found not welltaken.
 {¶ 20} In their third assignment of error, appellants argue that the trial court erred in awarding appellees attorney fees pursuant to R.C.3733.11(I) when the appellees failed to establish by a preponderance of the evidence that they had suffered any actual damages.
 {¶ 21} R.C. 3733.11(I) states:
 {¶ 22} "If the park operator violates any provision of divisions (A) to (H) of this section, the tenant or owner may recover actual damages resulting from the violation, and, if the tenant or owner obtains a judgment, reasonable attorneys' fees, or terminate the rental agreement."
 {¶ 23} Because appellees had no viable offers during the period appellants were in violation of R.C. 3733.11(C), the trial court held that it could not assess damages, due to loss of bargain or value to the mobile home itself, as such would require speculation. The trial court also held that appellees could not establish that their incidental damages, in the amount of $5,709.82, would have been incurred since there was no evidence that the mobile home would have sold even without appellants' interference. Nevertheless, the trial court awarded appellees a total of $6,144 in reasonable attorneys' fees, based upon the following rationale:
 {¶ 24} "Failure to prove by a preponderance of evidence actual damages, does not, however, preclude the recovery of reasonable attorneys' fees necessitated by [appellees'] seeking a judicial determination of [appellants'] violation. A straightforward reading of O.R.C. 3733.11(I) does not yield the conclusion that actual damages are a condition precedent to the recovery of reasonable attorneys' fees. The obtaining of a judgment by the tenant is such a condition precedent, and [appellees] did in fact obtain the judgment previously referred to on April 3, 2003. This interpretation of the clear language of the statute makes sense, we believe, because [appellees] were required to seek judicial resolution of their rights as tenants and to have the offending park regulation declared null and void. This would have to have been done whether or not [appellees] ever incurred actual damages."
 {¶ 25} Appellants argue that R.C. 3733.11(I) requires that a judgment for actual damages must be recovered before the award of attorneys' fees is proper. In support of their argument, appellants rely on Non-Employeesof Chateau Estates Resident Association v. Chateau Estates, Ltd., 2d Dist. No. 2002-CA-68, 2003-Ohio-2514, at ¶ 40; and the dissenting opinion of Fay Gardens Mobile Home Park v. Newman (1983),14 Ohio App.3d 144, 154. We, however, find these cases are distinguishable.
 {¶ 26} Initially, we note that the issue in Chateau Estates and FayGardens was whether attorneys' fees were assessed as costs or damages, not whether actual damages were required before attorneys' fees could be awarded to the plaintiff. Moreover, the statute in question in those cases, R.C. 3733.09(B), employed different language than R.C. 3733.11(I). Specifically, R.C. 3733.11(I) states that "the tenant or owner may recover actual damages resulting from the violation, and, if the tenant or ownerobtains a judgment, reasonable attorneys' fees (emphasis added)"; whereas, R.C. 3733.09(B) stated that "[t]he tenant may recover from the park operator any actual damages together with reasonable attorneys fees." With respect to R.C. 3733.09(B), the legislature clearly intended reasonable attorneys fees to be awarded only with actual damages; whereas, with respect to R.C. 3733.11(I), we find that the condition precedent to recovering attorneys' fees is obtaining a judgment, not specifically actual damages.
 {¶ 27} We recognize that in Chateau Estates and Fay Gardens, the courts held that the language in R.C. 3733.10(B), which is substantially similar to the language in R.C. 3733.11(I), required that "a judgment for actual damages be recovered before the award of attorney fees is proper." We, however, find this analysis is unsubstantiated. First, whether actual damages were required before attorneys' fees could be awarded was not the issue in those cases or the cases relied upon by those courts. See DycheReal Estate Fund v. Graves (1978), 55 Ohio App.2d 153; and Drake v.Menczer (1980), 67 Ohio App.2d 122. See, also, Jemo Associates v.Garman (1982), 70 Ohio St.2d 267, 272. Second, in a later appeal, the court that decided Chateau Estates awarded substantial attorneys' fees to the plaintiffs for the park operator's violation of R.C. 3733.10, for failing to maintain the park's water system, despite the fact that the only monetary award to the plaintiffs was a $13 rebate of rent per person per month to purchase bottled water until the park operator remedied the water situation. Non-employees of Chateau Estates Resident Associationv. Chateau Estates, Ltd., 2d Dist. No. 2004 CA 20, 2004-Ohio-3781. We find significant that the court did not repeat its earlier pronouncement that actual damages were required before attorneys' fees could be awarded, but instead stated, "R.C. 3733.11(I) provides for reasonable attorney fees where a tenant or owner obtains a judgment against a park operator for a violation of R.C. 3733.11(A)-(H)." Id. at ¶ 52.
 {¶ 28} Based on the differing statutory language and because the same issue is not in dispute in this case, as was in dispute in ChateauEstates and Fay Gardens, or the other cases relied upon by appellants, we find that those cases are distinguishable and we decline to rely upon them in this case. Rather, we note that the Ohio Supreme Court has stated that R.C. Chapter 3733 is remedial in nature and, therefore, must be liberally construed in order to promote its object and assist the parties in attaining justice. Schwartz v. McAtee (1986), 22 Ohio St.3d 14, 19. See, also, R.C. 1.11.
 {¶ 29} In this case, appellees sought declaratory judgment regarding their rights within the park. As affirmed by this court, the trial court held that appellants' actions were in violation of R.C. 3733.11(C) and, as such, declared judgment in favor of appellees. R.C. 2721.02 states that a "declaration has the effect of a final judgment or decree." (Emphasis added.)
 {¶ 30} A court, however, shall not award attorney's fees on a claim for declaratory relief pursuant to R.C. Chapter 2721 unless, for instance, "[a] section of the Revised Code explicitly authorizes a court of record to award attorney's fees on a claim for declaratory relief under this chapter." R.C. 2721.16(A)(1)(a). We find that R.C. 3733.11(I) authorizes such an award by stating, if a park operator violates any provision of R.C. 3733.11 (A) to (H), and the tenant or owner obtains a judgment, the tenant or owner may recover reasonable attorneys' fees.
 {¶ 31} We further find that it would be a strained construction of R.C. 3733.11(I) to require that actual damages must be awarded in order for a tenant or owner to recover attorneys' fees. As the trial court aptly held, in order to enforce their rights, appellees "were required to seek judicial resolution of their rights as tenants and to have the offending park regulation declared null and void. This would have to have been done whether or not [appellees] ever incurred actual damages." Accordingly, by liberally construing R.C. 3733.11(I), and in order to promote the object of R.C. 3733.11(C) and assist appellees in obtaining justice, we find that the trial court was entitled to award reasonable attorneys' fees, even without an award of actual damages, when a violation of R.C. 3733.11(A)-(H) has occurred. Appellants' third assignment of error is therefore found not well-taken.
 {¶ 32} On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs are assessed to appellants.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Skow, J., Singer, P.J. Concur.